UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **COMMERCIAL CAPITAL BANK** | **CIVIL ACTION NO. 11-1796** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **JOEL AND JANE HOUSE** | **MAG. JUDGE KAREN L. HAYES** |

RULING

This case concerns ranking security interests under the UCC.  Defendants Joel and Jane House are in default on multiple promissory notes held by Plaintiff Commercial Capital Bank ("CCB") and Third-Party Defendant the Farm Service Agency ("FSA").[1]  The notes are secured by Defendants' farm equipment.  In early 2011, five sales of Defendants' equipment resulted in the satisfaction of two notes held by the FSA.  Currently, CCB and the FSA each hold one outstanding note.

Before the Court is the United States' unopposed Motion for Summary Judgment, filed on behalf of the FSA.  [Doc. No. 7].  For the following reasons, the United States' Motion for Summary Judgment is GRANTED.

I.   FACTS AND PROCEDURAL HISTORY

In its Statement of Material Facts [Doc. No. 7-1], the United States describes three promissory notes that Defendants executed and delivered to the FSA:  Note 1A, dated April 18, 1997, for $53,000; Note 2A, dated February 10, 1999, for $96,300; and Note 3, dated March 24,

---

[1] The Farm Service Agency is part of the United States Department of Agriculture.

2009, for $450,270.

In order to secure payment for the notes, Defendants executed a series of security agreements dated April 18, 1997; February 10, 1999; and March 24, 2009, which granted the FSA a security interest in their farm equipment. [Doc. No. 6-2, Ex. 4; Doc. No. 6-3, Ex. 6; Doc. No. 6-4, Ex. 8]. The FSA perfected its security interests in Defendants' equipment by filing financing statements on April 18, 1997; February 5, 1999; and March 19, 2009. [Doc. No. 6-2, Ex. 5; Doc. No. 6-3, Ex. 7; Doc. No. 6-4, Ex. 9; see Doc. No. 7-3, p. 7].

On April 16, 2003, Defendants executed and delivered to the FSA additional promissory notes, referred to as Notes 1B and 2B, for the purpose of rescheduling the payments for Notes 1A and 2A, respectively.[2] Notes 1B and 2B were paid in full in March 2011, with proceeds from the sales of Defendants' property. Thus, Defendants' remaining obligation to the FSA is a balance of $428,192.87 due on Note 3 (as of November 30, 2011). [Doc. No. 7-3, pp. 2-3].

On June 14, 2005, Defendants executed and delivered to CCB a promissory note for the amount of $506,000. Defendants executed a security agreement on September 12, 2006, which granted CCB a security interest in their farm equipment, among other collateral types. [Doc. No. 1-1, Ex. B]. CCB perfected its security interest by filing a financing statement on September 14, 2006. [Doc. No. 1-1, Ex. C].

On July 26, 2011, CCB filed a lawsuit [Doc. No. 1-1] in the Fifth Judicial District Court, West Carroll Parish, seeking a judgment recognizing its interests under the Security Agreements in Defendants' movable and immovable property. Defendants filed their "Answer,

---

[2]The pleadings before the Court use different names to identify the various notes; this memo adopts the names used by the United States.

Reconventional Demand and Third Party Demand" [*Id.*] naming the United States, through the FSA, as the third-party defendant. The Third-Party Demand alleged that the FSA's perfected security interest in the equipment had lapsed and that CCB's security interest primed that of the FSA.

Defendants' arguments in their state court Third-Party Demand are summarized as follows: (1) the repayment of Note 1B with the sales proceeds constituted a novation of Note 1A; and (2) proceeds from past and future sales should be applied to CCB's note, rather than to the FSA's note, because the FSA's perfected security interest in the equipment lapsed.

On October 7, 2011, the United States removed the case to this Court, answered Defendants' Third-Party Demand [Doc. No. 6], and filed its Motion for Summary Judgment [Doc. No. 7]. Defendants do not oppose the Motion for Summary Judgment.

## II.   STANDARD OF REVIEW

A motion for summary judgment cannot be granted simply because there is no opposition. An unopposed motion seeking summary judgment shall be granted "if appropriate." FED. R. CIV. P. 56(e). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

Failure to file an opposition and statement of contested material facts requires the Court to deem the Movant's uncontested material facts admitted. Local Rule 56.2.

The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of

material fact. *Topalian v. Ehrman*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*. Unless the moving party meets this burden, the court may not grant the unopposed motion, regardless of whether any response was filed. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

### III.   LAW AND ANALYSIS

In its Motion for Summary Judgment, the United States requests that the Court dismiss Defendants' Third-Party Demand against the FSA with prejudice.

#### A.   Effect of Note 1B on Note 1A

Defendants, in their Third-Party Demand, allege that the issuance of Note 1B on April 16, 2003, had the effect of novating Note 1A. [Doc. No. 1-1, ¶ 13]. The United States asserts that novation never occurred because it is clear from the evidence that the parties' intent in issuing Note 1B was not to extinguish the debt of Note 1A; rather, their intent was to reschedule payments owed on Note 1A. [Statement of Material Facts, Doc. No. 7-1, ¶¶ 2-3].

Novation is the extinguishment of an existing obligation by the substitution of a new one. LA. CIV. CODE. ART. 1879. The intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed. LA. CIV. CODE ART. 1880. "The most important factor in determining whether a novation has been effected is the intent of the parties." *Scott v. Bank of Coushatta*, 512 So.2d 356, 360 (La. 1987) (citing *Placid Oil Co. v. Taylor*, 325 So.2d 313 (La. App. 3rd Cir. 1975)). "The burden of proof for establishing a novation is on the person

4

who claims it." *Placid*, 325 So.2d at 316.

The evidence demonstrates that Note 1B did not result in a novation of Note 1A. The United States points out, through the affidavit of the FSA's State Executive Director, Willie Cooper, that, because Note 1B contained language stating that its purpose was for "[r]escheduling" and "not for the satisfaction of the unpaid balance and interest on [Note 1A]," it is impossible to conclude that the intended effect of Note 1B was to novate the obligation created by Note 1A. [Doc. No. 7-3, pp. 5-6; *see* Declaration of Willie Cooper, Doc. No. 7-2, ¶¶ 5-6]. By letting Cooper's statements stand unopposed, Defendants fail to meet the requisite burden of proof to establish that novation was the intended effect of the parties in executing Note 1B. *Placid*, 325 So.2d at 316. Accordingly, this Court finds that Note 1B did not extinguish the obligation created by Note 1A.[3]

B.     **Priority of Security Interests Granted to CCB and the FSA in Equipment**

Defendants also allege that the FSA has no lien or security interest in their farm equipment. Defendants base this allegation on: (1) their contention that the FSA untimely continued its security interest for Note 1A; (2) the retirement of Notes 1B and 2B with proceeds from sales of the equipment; and (3) the fact that CCB's perfected security interest arose prior to Defendants' delivery of Note 3 to the FSA. [Doc. No. 1-1].[4]

The United States contends that Defendants' allegation that the FSA's security interest in

---

[3] Although Defendants' Third-Party Demand did not allege it, the United States' evidence also shows that Note 2B did not novate Note 2A.

[4] Defendants point out that future sales of additional equipment could potentially satisfy their indebtedness to CCB. However, a finding that the FSA's security interest primes that of CCB will make it unlikely that the CCB note will enjoy any proceeds from future sales of the remaining equipment. [Doc. No. 1-1, ¶¶ 9-11].

5

the equipment has lapsed is baseless because the FSA took the appropriate steps to perfect its security interest in Note 1A for future advances and to timely continue its 1997 financing statement. Accordingly, the United States argues that Note 3, executed in 2009, enjoys the same ranking perfected security interest as Note 1A, which was executed and perfected in 1997.

In order for a security interest to attach to collateral equipment and become enforceable against the debtor, the following requirements must be met: (1) value must be given to the debtor; (2) the debtor must have rights in the collateral; and (3) the debtor must authenticate a security agreement describing the collateral. LA. REV. STAT. ANN. § 10:9-203. The security interest is perfected upon the filing of a financing statement. §§ 10:9-308(a), 9-310(a). When there are competing perfected security interests in the same collateral, ranking is determined by the date of perfection. § 10:9-322(a).

The financing statement may be filed with the clerk of court of any parish and is effective for five years from the date of filing. §§ 10:9-501(a)(4), 10:9-515(a). The filing will remain effective for an additional five years from the fifth anniversary of the initial filing if a continuation statement is filed within the six months prior to the initial filing's fifth anniversary. Successive continuation statements may be filed in the same manner and with the same effect. § 10:9-515(d) and (e).

A security interest may secure future advances. § 10:9-204(c). In limited circumstances, the ranking of a security interest securing a future advance is based on the date of the advance. § 10:9-323(a); *see* §§ 9-309; 9-312(e), (f), and (g). However, none of these circumstances apply to the collateral classification of equipment. Thus, the ranking of a security interest in equipment that covers future advances relates back to the date the security interest was perfected, not the

date of the advance.

The FSA met all of the requirements for attachment on April 18, 1997, when: (1) it advanced the proceeds from Note 1A to Defendants, thereby providing them with value; (2) Defendants owned the equipment identified in the April 18, 1997 security agreement; and (3) Defendants authenticated the security agreement by signing it. Perfection occurred when the FSA filed the financing statement on the same day. [Doc. No. 6-2, Ex. 4, 5].[5] The April 18, 1997 security agreement granted the FSA a security interest in equipment "to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made." [Doc. No. 6-2, Ex. 4].[6] Thus, the Court finds that the FSA's security interest in the equipment secured future advances.

Next, the United States addresses Defendants' allegation that the FSA's continuation of the financing statement for Note 1A was untimely. Specifically, Defendants contend that Note 1B "was based on a UCC filing made by FSA on 4/18/97. This security interest was untimely continued on 2/28/07 and thus, lost its rank to that of CCB pursuant to its 9/14/06 filing." [Doc. No. 1-1, ¶ 18.A.].

However, the United States provides evidence showing that this allegation is baseless. The FSA's security interest in Defendants' equipment was perfected upon the filing of a

---

[5]The FSA again perfected its security interest in Defendants' equipment under Note 2A through a similar sequence of events when it filed a financing statement on February 5, 1999. [Doc. No. 6-3, Ex. 6, 7].

[6]The Security Agreement for Note 2A contains identical language for securing future advances.

financing statement on April 18, 1997.  The FSA maintained its perfected security interest by filing continuation statements on December 21, 2001, and again on February 28, 2007.  [Doc. No. 6-2, Ex. 5, 5A, 5B].  Both continuation statements and the financing statement were filed under the same registry number.  Additionally, both continuation statements were timely filed within the six months prior to the five-year anniversaries of the April 18, 1997 financing statement.  Accordingly, the Court finds that the FSA timely continued Note 1A's financing statement, thus preserving its perfected security interest in Defendants' equipment.

The United States also discredits Defendants' allegation that the satisfaction of Notes 1B and 2B from the sales proceeds caused the FSA's security interest to lapse.  As discussed above, Note 1B did not novate Note 1A.  *See supra* Part III.A.  Also, because Note 1A's security agreement secured future advances and Note 1A's financing statement was timely continued, the FSA's security interest in Note 3, which was executed in 2009, enjoys the same perfection that arose in 1997.  Thus, the Court also finds that the retirement of Notes 1B and 2B did not extinguish the FSA's perfected security interest in the equipment that arose in 1997.

For the same reasons, the Court rejects Defendants' final argument that CCB's perfected security interest primes the FSA's perfected security interest simply because CCB's date of perfection precedes Note 3's date of execution.  The fact that the FSA's Note 3 was executed after CCB perfected its security interest in Defendants' equipment is inconsequential, given that the FSA's perfected security interest in the equipment, which arose in 1997, extended to future advances and was continuously maintained.

For the foregoing reasons, the United States' Motion for Summary Judgment is GRANTED.

### C. Remand

In their Rule 26(f) Case Management Report [Doc. No. 13, p. 2], Defendants and CCB consented to remand of the case pursuant to §1367 if the Court grants summary judgment for the United States. Accordingly, and because the dismissal of the claims against the United States results in the dismissal of all claims over which this Court has original jurisdiction, the Court *sua sponte* orders the Clerk of Court to remand all remaining claims pursuant to 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the foregoing reasons, the United States' Motion for Summary Judgment is GRANTED, and Defendants' Third-Party Demand against the United States is DISMISSED WITH PREJUDICE.

Additionally, the Clerk of Court is directed to remand all remaining claims to the Fifth Judicial District Court, Parish of West Carroll, State of Louisiana, pursuant to 28 U.S.C. § 1367(c)(3).

MONROE, LOUISIANA, this 24th day of January, 2012.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE